**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**TEVON STEPHENS,**<br><br>**Defendant.** | Case: 1:25-mj-00053<br>Assigned To : Sharbaugh, Matthew J.<br>Assign. Date : 3/26/2025<br>Description: COMPLAINT W/ARREST WARRANT |

**AFFIDAVIT IN SUPPORT OF A**
**CRIMINAL COMPLAINT AND ARREST WARRANT**

I, ▮▮▮▮▮▮▮▮▮, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AFFIANT BACKGROUND**

1. I am a Detective with the Metropolitan Police Department of the District of Columbia (MPDC). I have been employed by the MPDC since 2009, I am currently assigned as a Special Deputy United States Marshal to the Federal Bureau of Investigation (FBI) / MPDC Child Exploitation Task Force (CETF) and Northern Virginia Regional Internet Crimes Against Children (ICAC) Task Force, where my duties include investigating cases pertaining to the sexual exploitation of children and online offenses involving children, including the production, transportation, distribution, receipt, and possession of child pornography. During my tenure with the MPDC, I have been assigned to the Third District Patrol Operations, Third District Crime Suppression Team, Third District Vice Unit, Homeland Security Bureau Intelligence Fusion Unit, and, since 2013, to the Youth and Family Services Division (YFSD) where I worked in the Physical and Sexual Abuse Branch (PSAB) prior to being assigned to the task force. I have gained experience through training with the MPDC and in my everyday work related to conducting these types of investigations. Moreover, I am a law enforcement officer who is engaged in enforcing

criminal laws, including offenses in violation of 18 U.S.C. § 2251(a), Sexual Exploitation of Children, 18 U.S.C. § 2252(a)(2), Distribution of Child Pornography, and 18 U.S.C. § 2252(a)(4)(B), Possession of Child Pornography. As such, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

2. I have been personally involved in the investigation of this matter. I am familiar with the information contained in this Affidavit based on my participation in the investigation, my review of documents and other evidence, my conversations with other law enforcement officers, and my training and experience. Because this Affidavit is being submitted for the limited purpose of establishing probable cause to arrest the defendant, I have not included the details of every aspect of the investigation. Where actions, conversations, and statements of others are related herein, they are related in substance and in part, except where otherwise indicated.

## PROBABLE CAUSE

3. On Wednesday, January 15, 2025, a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) assigned to the Washington Field Office (WFO) was acting in an online undercover (UC) capacity as part of the FBI Child Exploitation and Human Trafficking Task Force, operating out of a satellite office in Washington, D.C. The UC is acting as a father to a purported nine-year-old boy.

4. In that capacity, the UC was monitoring a dating application known to contain users interested in the sexual exploitation of children. The UC has monitored this dating application for several years and knows that other users indicate interest in child exploitation via hashtags on their dating profiles. The UC advertises that he is interested in "#boy4dad #nolimits #sons4dads" on his own dating profile.

5. On January 15, 2025, the UC was messaged by a user on this application that had a display name of "unknown (herein: Subject 1)" and was geolocating approximately two miles away from the UC. The profile was displaying a clear photograph of an African American adult male's face with a distinctive beard. The UC reviewed the user's account and found that they had indicated that they were "23 years old" and provided an answer of "I'm looking for young ? 👀" in the section of their profile asking, "What are you looking for."

6. The UC had the following conversation with the account,

| | |
|---|---|
| Subject 1: | Wassup |
| UC: | Nothing….you |
| Subject 1: | Chilling what u looking for on here |
| UC: | Other like minded pervs 😈. You? |
| Subject 1: | Oh what u into? |
| UC: | No limits. Taboo. Family incest |
| Subject 1: | & some fun freaky stuff and oh okay I like that |
| UC: | Yah 🍑🏈 |
| Subject 1: | Yeah I'm with it |
| UC: | Hell yah. Chat elsewhere? |
| Subject 1: | Yeah u got snap. Or message |
| UC: | Nahhhh I don't mess with snap. Message? |
| Subject 1: | Ok what's ya number |
| UC: | 202-288-9409? |
| Subject 1: | I text u |
| UC: | Got it 👍 |

7. At approximately 5:08 PM, the UC was messaged from a phone number of 202-982-8994, which was later identified as a number associated with the Pinger application. The UC stated, "Hey man. Nice to meet like minded." Subject 1 asked the UC, 'Yeah u into females or just boys" and the UC advised both. Subject 1 reported, "Oh okay same u got kids." The UC advised that he has one and lives in the "NoMa area." Subject 1 asked, "Oh okay so you got any younger people to do it with" and indicated that they live near Rhode Island Avenue. Subject 1 also indicated, "…10 up and girls and boys" after being asked what his preferred age is.

3

8. The UC indicated that his purported son is nine years old and asked Subject 1 if he had any experience. Subject 1 reported, "Yeah my first time was with 12-year-old girl u do stuff with your son?" Subject 1 also indicated that he had been 22 or 23 years old when he was with the 12-years old. The UC advised, "Yah have fun. Got anything pervy so I know you're legit." Subject 1 asked, "Like cp stuff?" and the UC reported, "I don't care, I'll never say no to good vids or pics of littles ones."

9. Subject 1 reported that he was with the 12-year-old "a min ago" and then advised, "But I dabble still at times I got younger females and stuff and I don't got video save on my Phone but I got cp links." The UC responded, "Nice. Love to see."

10. Subject 1 forwarded the UC a hyperlink to an application called "Potato Chat" which he described as a "App with cp porn." The link led to a chat group called, "LINKS LA NUEVA ILUMINATI." The UC joined the group and found that the chat group contained links and videos of what appeared to be child erotica content.

11. The group chat also included thumbnails of prepubescent children completely nude with their genitals exposed to the camera. A close-up photograph of what appears to be a female infant or toddler's genitals was also displayed within the group. Links to other groups were present to include a link to a group on an unknown application called, "kids video lover" and a Telegram group advertising, "Mom Son, cp, zoo, necro, Indian Cp, dad daughter, bro-sis."

12. Subject 1 asked the UC, "Yeah so what u do with your son ?" and "Yeah so u got somebody we can do it with." The UC advised that his purported son has been "trained" and that he "sucks and strokes." Subject 1 advised, "And that's cool" and asked, "U ever did stuff with other people with your son." The UC advised that he had not but wanted to and Subject 1 reported, "Yeah I would love to get some head." The UC reported, "As long as I can watch and everyone

keeps their mouth shut." Subject 1 stated to the UC, "We should link up" and asked, "U got vids?" The UC advised that he did not because he keeps his "original stuff" offline.

13. On January 17, 2025, the UC responded to a message from Subject 1 and indicated that he was bored and wanted to "perv" instead of work. Subject 1 advised, "Lets perv" and the UC asked, "See anything good today?" Subject 1 asked "Like what" and the UC forwarded a photograph of his purported son and a photograph of a prosthetic penis over top of a pair of underwear his purported son was wearing in the previous photograph. Subject 1 responded with, "I'm tryna join. U drive?" and the UC advised that he does. Subject 1 reported, "I don't but I got a Youngin who was suck us both up. Wyd now u with ya son." Subject 1 reported that the "Youngin" is 16.

14. The UC indicated that he could get his son the next week if Subject 1 was interested. Subject 1 reported, "Yeah I definitely do. Tyna get suck by your son." The UC asked Subject 1 if he had anything pervy besides the group link because "I don't wanna fuck with a vigilante or some YouTuber." Subject 1 advised, "U in good hands and I don't I just got links or I can send u vids from other young girls who me stuff."

15. Subject #1 forwarded the UC a forty-one-second-long video that appeared to be self-recorded by a female wearing a green shirt with her genitals exposed. The female is visible from the torso down and she is observed penetrating her vagina with her fingers. The female does not appear to have any pubic hair.

16. Subject 1 then forwarded a still image of a female standing in a bathroom wearing black and white pants and a black bra. The female is only visible from the nose down and the photograph was taken using a mirror.

5

17. The UC asked how old the girl was and Subject 1 reported, "She 15 now." The UC asked Subject 1 what the best and youngest that he had was. Subject 1 reported, "12 is the youngest I have. The best I had was the young females." The UC asked if Subject 1 had gotten to take pictures or videos with the 12-year-old and Subject 1 advised, "I got vid of her playing wit herself…I got vids of fucking her but I only comfortable showing u that in person."

18. Subject 1 forwarded the UC a thirty-three long second video that was recorded by what appears to be a nude male from the waist down. The video records a female laying on a green blanket nude from the waist down wearing a white shirt. The female is penetrating her genitals with her fingers and appears to have distinctive blonde short dreadlocks.

19. Subject 1 reported, "Yeah I lost her number but ima find her again. I end up getting caught by the police cause she came with another girl and when we was fucking she call the boys but the young girl kept it solid. And told them we didn't do nothing." The UC advised that he was glad Subject 1 didn't get caught and Subject 1 reported, "Yeah she came back the next day after that."

20. Subject 1 continued to advise the UC that he had been sexually active with numerous "youngins" to include, "Yeah one time I got head from this lil boy he was like 13 14 his Lul sister was n the same room sleep while he was sucking me." Subject 1 also advised, "…yeah I got least 10 & more bodies of youngins." The UC later asked Subject 1 how he meets these children and Subject 1 reported that he meets them at train stations and Instagram.

21. The UC asked Subject 1 if he was ok with coming to "us" and advised that he would tell his purported son, "we're gonna have some fun." The UC asked Subject 1, "You got any pics or anything you want me to share with him? Never shared him so I want to make sure he's comfortable." Subject 1 asked, "Like a dick pic" and forwarded a photograph of an erect adult

6

male's penis. The UC advised that he share the picture in person with his purported son and asked Subject 1 if he could also share the video of the girl "playing with herself." Subject 1 advised, "Oh okay as long as he likes it" and reported, "I'm tryna nut all on him. He goin suck us off together?" The UC reported that his purported son does not have sex yet and Subject 1 advised, "Yeah that's fine he still young and I'll take some head tho."

22. The UC and Subject 1 continued to discuss the potential abuse of the UC's purported son by Subject 1 during January 2025. Subject 1 also indicated during this time that he had been trying to locate another child he knew via social media. Eventually the UC and Subject 1 communicated less frequently. The UC advised that chatting at this frequency was making him paranoid and Subject 1 reported that he had lost his job and was "dealing with life." Subject 1 also reported that he had been "dealing with my Lul Youngin but I'm still tryna find more." Subject 1 reported that this female was fifteen years old and he had known her since she was thirteen years old. Subject 1 also advised that her mother and stepfather were aware of him.

23. On January 16, 2025, a member of the FBI CEHTTF issued an administrative subpoena to Pinger for subscriber information and internet protocol (IP) logs related to 202-982-8994 (the phone number Subject 1 used to communicate with the UC). Pinger is an application that provides individuals with phone numbers that they can use to text or call other individuals.

24. On January 27, 2025, Pinger provided the requested information and indicated that the user had registered the account with an email address of lostguy1001@gmail.com, an IP address of 71.114.77.21, and had used an Apple iOS device with the account. The account had been consistently accessed from an IP address of 96.231.239.2 during the month of January 2024, to include on January 17, 2025 when Subject 1 contacted the UC.

25. On January 27, 2025, a member of the FBI CEHTTF issued an administrative subpoena to Google for subscriber information and IP logs related to Lostguy1001@gmail.com.

26. Google subsequently provided the requested information which indicated that the Google account of Lostguy1001@gmail.com had been created on October 3, 2024, with a name of Lyon King. The account had been accessed multiple times on October 3, 2024, from the IP address of 96.231.239.2 (the same IP address associated with the Pinger phone number).

27. On February 7, 2025, Verizon provided the requested information and indicated that the Verizon IP address of 96.231.239.2 is registered to a subscriber named Linda Pashal. The Verizon IP address resolves to 27XX 30th Street Northeast, Washington, D.C., 20018. Paschal provided a phone number of 202-230-3815 and an email address of furaha832@gmail.com.

28. A check of police records indicates that officers previously responded to a report of an assault between Tevon Stephens and his aunt at the 27XX 30th Street Northeast. An individual who identified herself by a name known to law enforcement as Linda Pashal's alias was present at the 30th Street address when officers arrived. Based on prior police reports reviewed by your affiant, it appears that Tevon Stephens may be Linda Pashal's grandson.

29. Your affiant conducted a records check of a Metropolitan Police Department (MPD) database and found that an incident report for a "Stop" related to a 911 call for "Investigate the Trouble" on September 12, 2023. The report indicated that a juvenile female contacted 911 and reported that her friend was inside the 30th Street address. The juvenile female reported that she felt uncomfortable that her friend was inside with an adult male.

30. MPD arrived on scene at the 30th Street address and contacted the adult male inside the residence who was identified as Trevon Stevens. Stevens provided a date of birth of 02-28-XXXX and a home address of the above-mentioned 30th Street address. A juvenile female was

located within the home with the initials J.E.  None of the parties involved disclosed any allegations of sexual abuse at that time and J.E. was transported by MPD to her parents.  J.E. was thirteen years old at the time of the incident. This appears to corroborate Subject 1's statement above that police responded in connection with an incident involving two girls.

31.   Your affiant conducted a check of commercial, law enforcement only, and open-source databases for any information related to Stevens.  Your affiant identified an adult male named Tevon Nathanial Stephens with a date of birth of February 28, XXXX, that resides at the 30th Street address.  A D.C. driver's license was located for Stephens and his DC Department of Motor Vehicles (DMV) photograph was reviewed by your affiant (pictured below on the right). Your affiant found that the DMV photograph appeared to depict the same person that was shown on the above-referenced dating application account with the account holder "unknown" that contacted the UC (pictured below on the left).  Your affiant believes that the individual who provided the name Trevon Stevens to members of MPD on September 12, 2023, is Tevon Stephens. The address on Tevon Stephens' driver's license is the 30th Street address.



32.     Your affiant conducted a records check of commercial, law enforcement only, and open-source databases for any information related to J.E.  Your affiant found photographs related to MPD missing person investigations that showed J.E. with blonde short dreads tied up on top of her head. This hairstyle is similar to the hairstyle of the person depicted penetrating her genitals on a green blanket in the video distributed by Subject 1.  These photographs were taken around the time that MPD responded to the 30th Street address and found J.E. at the address.

33.     On February 13, 2025, your affiant met with a member of MPD who has firsthand knowledge of J.E. from investigations related to her and interacting with her face to face.  The member was shown a short clip of the video sent by Subject 1 to the UC which showed the female penetrating her genitals with her fingers while laying on top of a green blanket.  The member

10

reviewed the clip and advised that female in the video has the same body type of J.E., but the resolution of the video makes it difficult to identify the person by their face.

34. On March 20, 2025, Subject 1 sent the UC a video depicting a minor child who appears to be prepubescent having her mouth penetrated by a male's penis. Subject 1 then sent another image depicting an age-questionable child displaying her genitals to the camera.

35. After distributing the above-described videos to the UC on March 20, Stephens indicated that the females in the videos were "just random" and that the second video had, "…been everywhere specially Twitter." The UC asked Stephens when he wanted to meet and indicated he would have his purported son "next week." Stephens reported, "Ok that's fine" and the UC advised, "I can scoop you up if you want. If you're cool with getting a hotel room for us? Don't care where." Stephens reported, "I can figure it out. Cause I'm not working for the funds rn."

36. The UC advised Stephens that he preferred to meet Wednesday morning, meaning the morning of March 26, 2025, and Stephens advised, "Yeah I can do Wednesday morning what time." Stephens later reported to the UC that he was unable to meet because he had work.

37. On March 26, 2025, members of the FBI Special Weapons and Tactics Team (SWAT) executed a residential search warrant at XXXX 30th Street Northeast. During the course of executing the warrant, Stephens was located walking down the stairs of the residence.

38. Stephens was subsequently interviewed by law enforcement and advised that he was under no obligation to speak to law enforcement, did not have to answer questions, and could stop talking at any point. Stephens acknowledged this information and agreed to speak to law enforcement.

39. Stephens advised during the course of the interview that he had a text application on his phone that he had used to communicate with a dad. Stephens reported that he also had an

11

online dating account. Stephens was shown screenshots of the above-referenced online dating account to include what was posted for his interests and advised those are his accounts. Stephens also acknowledged that he had a Google email account named "Lostguy" which corresponds to the above-referenced information in paragraph 24.

40. Stephens initially reported that he had not sent any videos to the "dad" and later advised that he did not want to talk about this.

41. Stephens reported that he remembered law enforcement coming to his home regarding a female being in his home. Stephens advised that he found out how old the girl was at that time. During the interview, law enforcement showed Stephens a single photograph of the juvenile female, known to law enforcement as the above-described juvenile with initials J.E. Stephens reported that the photograph was of the juvenile female who was located at his home in September 2023. Stephens reported that he was just friends with her.

42. Stephens reported that he had left his phone in his bedroom when he saw members of SWAT coming to the home. Stephens reported that he believed he dropped the phone by his bed.

43. Law enforcement subsequently located the device in a corner of a bathroom next to Stephen's bedroom. The device was reviewed by law enforcement pursuant to the search warrant and the above-described conversation between the UC and phone number 202-982-8994 were located on a messaging application called "Text Now." Law enforcement reviewed the chats between the UC and phone number 202-982-8994 and located the two files distributed by Stephens which included the prepubescent female having her mouth penetrated by an erect penis. These chats corresponded to the chat communications conducted by the UC with that phone number.

## **CONCLUSION**

44.     Based on the aforementioned facts, your affiant respectfully submits that there is probable cause to believe that **TEVON STEPHENS**, committed the offense of Distribution of Child Pornography in violation of Title 18, United States Code, 2252(a)(2).



Detective
Metropolitan Police Department

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on March 26, 2025.

_____
HONORABLE MATTHEW J. SHARBAUGH
UNITED STATES MAGISTRATE JUDGE